UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| FAYE J. STEPHENS, | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| vs. | ] 2:09-CV-01631-LSC |
| | ] |
| MICHAEL J. ASTRUE, | ] |
| Commissioner, | ] |
| Social Security Administration, | ] |
| | ] |
| Defendant. | ] |

MEMORANDUM OF OPINION

I.   Introduction.

Plaintiff, Faye J. Stephens, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI"). Ms. Stephens timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Stephens was fifty years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a twelfth grade education. (Tr. at

94, 115.)  Her past work experiences include employment as a truck driver and pari-mutual ticket cashier at a race track.  *Id*. at 378.  Ms. Stephens claims that she became disabled on November 1, 2004, due to leg, knee, lower back, and ankle pain.  *Id*.

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is "doing substantial gainful activity."  20 C.F.R. §§ 404.1520(a)(4)(i).  If he or she is, the claimant is not disabled and the evaluation stops.  *Id*.  If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.  20 C.F.R. §§ 404.1520(a)(4)(ii).  These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.  *Id*.  The decision depends on the medical evidence in the record.  *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops.  20 C.F.R. §§ 404.1520(a)(4)(ii).  Otherwise, the analysis continues to step three, which is a determination of whether the claimant's

impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii).  If the claimant's impairments fall within this category, he or she will be found disabled without further consideration.  *Id*.  If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step.  20 C.F.R. § 404.1520(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv).  If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops.  *Id*.  If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step.  *Id*.  Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work.  20 C.F.R. §§ 404.1520(a)(4)(v).  If the claimant can do other work, the claimant is not disabled.  *Id*.

Applying the sequential evaluation process, the ALJ determined that Ms. Stephens has not engaged in substantial gainful activity since the alleged

onset of her disability. (Tr. at 17.) According to the ALJ, Plaintiff's bilateral knee pain, lower back pain, and status post cholecystectomy and sphincteroplasty are considered "severe" based on the requirements set forth in the regulations. *Id*. However, he found that these impairments neither meet nor medically equal any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. *Id*. The ALJ did not find Ms. Stephens's allegations to be totally credible, and he determined that she has the following residual functional capacity: work at levels of at least light exertion as defined in the regulations. *Id*. at 19,18.

According to the ALJ, Ms. Stephens is able to perform her past relevant work as a pari-mutual ticket cashier. *Id*. at 20. The ALJ concluded his findings by stating that Plaintiff "was not under a 'disability,' as defined in the Social Security Act." *Id*. at 21.

II.   Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal

standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id*.  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence.  *Miles*, 84 F.3d at 1400.  No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622,

624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III. Discussion.

Ms. Stephens alleges that the ALJ's decision should be reversed and remanded because the ALJ placed too much emphasis on the consultative examiner's opinion of Dr. Bruce Romeo. Plaintiff maintains that the ALJ should have placed more emphasis on the opinion of Dr. R. Rex Harris, a consultative orthopaedic surgeon, and Dr. Jack Zaremba.

The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d). Typically, greater weight is given to the opinion of a specialist than a non-specialist. *See* 20 C.F.R. §§ 416.927(d)(5). The ALJ may discount the opinion of a physician, even a treating physician, for good cause. "Good cause" exists for an ALJ

not to give a physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (*citing Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record). Finally, events that occurred after an examination can be used to cast doubt on the validity of that opinion. *See Crawford*, 363 F.3d at 1160 (citing events two weeks and five weeks after the relevant examination).

The ALJ initially found that Plaintiff was not disabled in a decision issued in 2006. The Appeals Council remanded the matter to the ALJ to "[o]btain an updated consultative examination by an orthopedist or other appropriate specialist." (Tr. at 282-83.) Dr. Romeo, an internal medicine physician, examined Plaintiff on August 31, 2007. *Id.* at 19. Dr. Romeo's physical examination showed no deformity, tenderness, synovitis, effusion, clubbing, cyanosis, or edema. *Id.* at 295. He further found that her back

showed no spasm or deformity, her muscle groups and strength were 5/5, her sensory was intact, and her straight leg test was negative. *Id.* at 295-96. Range of motion studies were all normal, x-rays of the knees were normal, and no evidence of fractures or subluxation was discovered. *Id.* at 297-301. Plaintiff's gait was normal, she used no assistive device, and she could stoop, kneel, crouch, tandem walk, and walk on her heels and toes. *Id.* at 295. The ALJ determined that these findings supported a residual functional capacity assessment that Plaintiff was able to perform her previous work as a pari-mutual ticket cashier. *Id.* at 20.

Plaintiff argues that the ALJ should have given the opinions of Dr. Harris and Dr. Zaremba greater weight in determining her residual capacity. The ALJ noted that Dr. Harris found in his July 19, 2005 examination that Plaintiff could only sit, stand and walk for a total of three hours in an eight hour workday. *Id.* He further recognized that Dr. Zaremba found in his April 29, 2005 examination that Plaintiff would need to rest at least six hours a day. *Id.* The ALJ determined, however, that the conclusions of Dr. Zaremba and Dr. Harris were inconsistent with their findings and, in fact, were more consistent with the findings of Dr. Romeo.

Dr. Harris, for instance, concluded that Plaintiff could not stand, walk, or sit for more than five minutes at a time and a total of one hour in a day. *Id.* at 208.  His notes, however, reveal that Plaintiff had a full range of motion in the neck, shoulders, elbows, wrist, fingers, hips, knees, and ankles; a normal grip; and 5/5 muscle groups in the upper extremities.  *Id.* at 206.  Dr. Harris stated that x-rays showed well-preserved joint spaces in the knees and lumbar spine with no evidence of arthritis.  *Id.*  Based on these findings, Dr. Harris concluded that the Plaintiff was "capable of work in the work place in a light to sedentary capacity with the ability to move around and no heavy lifting."  *Id.* at 207.

Dr. Zaremba's findings were similarly inconsistent with his conclusions.  Dr. Zaremba indicated that Plaintiff could only sit one to two hours and needed to lay down for six plus hours a day.  *Id.* at 202.  Dr. Zaremba's findings, however, indicated that motor and sensory were intact and showed no evidence of atrophy in Plaintiff's extremities.  *Id.* at 200.  X-rays showed only mild degenerative arthritic changes in the knees and were otherwise unremarkable.  *Id.* at 202.

It is evident from the record that the ALJ had good cause to afford

significant weight to the opinion of Dr. Romeo while discounting that of Dr. Harris and Dr. Zaremba. The ALJ's determination that Plaintiff could perform sedentary work in her previous position as a parimutuel ticket cashier is supported by substantial evidence.

IV. Conclusion.

Upon review of the administrative record, and considering all of Ms. Stephens's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this 3rd day of August 2010.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

153671